United States District Court
Southern District of Texas
FILED

OCT 27 2004

Michael N. Milby, Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ARTURO CARREON | : | |
| | : | |
| VS. | : | CIVIL ACTION NO. B-03-234 |
| | : | |
| BROWNSVILLE MEDICAL CENTER | : | |
| AND TENET HEALTHCARE, LTD. | : | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW, Tenet Healthcare Ltd. d/b/a Brownsville Medical Center, sued herein as Brownsville Medical center and Tenet Healthcare, Ltd., (hereafter referred to as "BMC") and files this its **Motion for Summary Judgment** and would respectfully show unto the Court the following:

### I. Introduction

Plaintiff pleads a claim under the Emergency Medical Treatment and Liability Act ("EMTALA"), found at 42 U.S.C. §1395dd. The plaintiff in this case presented to the emergency room of Brownsville Medical Center for the first time at 2:55 a.m. on December 7, 2001 with a fractured tibia. Exh. 1(O'Brien affidavit). X-rays were taken and the fracture was splinted by emergency room personnel. Exh. 1 (O'Brien affidavit). The plaintiff was discharged at 5:20 a.m. with instructions to follow-up with an orthopedic physician later in the day. Exh. 1 (O'Brien affidavit).

However, Plaintiff did not attempt to see the orthopedic physician after that emergency room visit, and reappeared in the emergency room a week later complaining of pain and poor circulation to the injured area. Exh. 2 (Aleman depo p. 74); Exh. 1 (O'Brien affidavit). His old splint was removed and a new splint applied, which relieved his symptoms. Exh. 1 (O'Brien affidavit). The

emergency room doctor arranged for a referral to an orthopedist. Exh. 1 (O'Brien affidavit). The plaintiff chose not to follow up with the orthopedic referral. Exh. 2 (Aleman depo. p. 79, 81).

Plaintiff contends the hospital violated it's screening and stabilization obligations under EMTALA.[1] Exh. 3 (Joint Discovery Case Management Plan). The essence of plaintiff's complaint is that BMC is responsible not obtaining follow-up care from an orthopedic doctor. The plaintiff asserts he was unable to pay for follow up care. While these circumstances, if true, are certainly unfortunate, they do not constitute an EMTALA violation by the hospital. There is no evidence that the hospital failed to comply with its screening or stabilization obligations under EMTALA, nor any legal basis for contending that any difficulties the plaintiff may have had in obtaining follow-up care from an orthopedic physician outside the hospital can be construed as an EMTALA violation by the hospital. In fact, the affidavit of Dr. O'Brien and case law demonstrate that BMC fully complied with the screening and stabilization requirements.

## II. Requirements of EMTALA

EMTALA requires hospitals to provide patients who present for emergency care with an appropriate medical screening and stabilization of known emergency medical conditions. *Battle v. Memorial Hosp. at Gulfport*, 228 F.3d 544, 557 (5th Cir. 2000). In the language of the statute, these duties are to:

> (1) "provide for an appropriate medical screening examination within the capability of the hospital's emergency department" (42 U.S.C. §1395dd(a)); and

> (2) if the person has an emergency medical condition, to provide "such further medical examination and such treatment as may be required to stabilize the medical condition" (42 U.S.C. §1395dd(b)(1)(A)).

---

[1] For purposes of this motion, the language of the statutes cited is that in effect at the time of the plaintiff's presentation to BMC's emergency room.

"Emergency medical condition" means "a medical condition manifesting itself by acute symptoms of a sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in -
    (i) placing the health of the individual . . . in serious jeopardy,
    (ii) serious impairment to bodily functions, or
    (iii) serious dysfunction of any bodily organ or part." 42 U.S.C. §1395dd(e)(1)(A).

"To stabilize" means "to provide such medical treatment of the [emergency] medical condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result from or occur during the transfer of the individual from a facility." 42 U.S.C. §1395dd(e)(3)(A). Essentially the same definition is repeated in the regulations at 42 C.F.R. 489.24(b).

### III. No fact issue concerning whether BMC met its screening obligation

The duty under EMTALA to provide "appropriate medical screening" is not judged by the screening's proficiency in accurately diagnosing the patient's illness, but rather by whether it was performed equitably in comparison to other patients with similar symptoms. *Marshall v. East Carroll Parish Hosp. Serv. Dist.*, 134 F.3d 319, 322 (5th Cir. 1998). In other words, the hospital must offer the patient the same screening examination that it would have offered to any other patient in a similar condition with similar symptoms. *Id.* at 323. EMTALA is not a federal malpractice statute. *Id.* at 322. A hospital fulfills its screening duty if it provides for a screening examination reasonably calculated to identify critical medical conditions that may be affecting symptomatic patients and provides that level of screening uniformly to all who present substantially similar complaints. *Correa v. Hospital San Francisco*, 69 F3d 1184, 1992 (1st Cir. 1995).

Arturo Carreon was thoroughly examined, x-rays were taken, and his fractured tibia was properly diagnosed. Exh. 1 (O'Brien affidavit). There is no issue of material fact issue regarding the appropriateness of the screening provided Mr. Carreon. The summary judgment evidence shows Mr. Carreon's ankle condition was recognized and no evidence of any discrepancy in the screening

of the plaintiff at BMC. In fact, Dr. O'Brien's affidavit conclusively establishes that Mr. Carreon was provided with an appropriate medical screening exam on both visits. Exh. 1 (O'Brien affidavit). On the first visit Mr. Carreon was properly diagnosed with an ankle fracture. On the second visit he had a circulation problem that was promptly recognized and managed and Mr. Carreon was re-splinted.

### III. No fact issue concerning whether BMC met its stabilization obligation

Prior to discharging the patient, the emergency room personnel at BMC splinted the plaintiff's fracture and referred him to see an orthopedic physician. Exh. 1 (O'Brien affidavit). This care assured, within reasonable medical probability, that no material deterioration of the patient's condition would likely result from the discharge. Exh. 1 (O'Brien affidavit), *see* 42 U.S.C. §1395dd(e)(3)(A). The summary judgment evidence conclusively establishes that Mr. Carreon was appropriately stabilized on both visits. On the first visit he was appropriately treated with a splint, crutches, and non-weight bearing ambulation instruction and told to elevate his ankle and apply ice. On the second visit the cyanotic condition of his ankle was alleviated and his circulation returned to the ankle and he had good blood flow. Mr. Carreon received the appropriate treatment for a closed ankle fracture which entails application of a splint and immobilization and follow up care with an orthopedic. Exh. 1 (O'Brien affidavit). The patient did not have an open wound. He had a closed fracture.

### IV. Case law supports summary judgment for BMC.

*Green v. Touro Infirmary*, 992 F.2d 537 (5th Cir. 1993) teaches that EMTALA is not violated where the patient suffers harm due to the failure or inability to obtain follow-up care after stable discharge from the hospital. Exh. 4 (copy of case). In that case, the patient was diagnosed with acute nephrotic syndrome and the attending physician noted that the patient needed to be admitted.

After treating the patient for seven hours, the emergency room discharged the patient with instructions to go as soon as possible to another hospital for treatment. At the time of discharge the patient had stable vital signs, no acute distress, and was ambulatory. However, the patient apparently never went to the other hospital and died. The court held that the hospital was entitled to summary judgment because the patient was stable at the time of discharge. *Id.* at 539-40.

*Phipps v. Bristol Reg'l Med. Ctr.*, 117 F.3d 1421, 1997 WL 397200 (6th Cir. 1997, not designated for publication)[2] is virtually identical to our case. Exh. 5 (copy of case). There, the emergency room doctor advised the patient that his ankle and foot were possibly broken and arranged an appointment with an orthopedic surgeon for the next day. Before discharging the patient, the emergency room doctor placed the injured leg and foot in a splint and provided the patient with crutches. However, the orthopedic surgeon refused to see the patient because the patient was covered by a Medicaid-like program. The court held that the hospital was entitled to summary judgment on the plaintiff's EMTALA claim because the patient was stabilized "for what [the emergency room doctor] thought would be a twenty-four hour period before [the patient] saw an orthopedic surgeon." *Id.* at *2.

## V. Conclusion

Any injuries plaintiff suffered from a lack of care are attributable not to the violation of any EMTALA obligation by the hospital, but are due to the plaintiff's own failure to obtain follow-up care from an orthopedist as he was instructed to do by the hospital's emergency room personnel. Plaintiff testified that he "didn't remember" any orthopedic doctor refusing to see him, but that really his mother would know better because she "does everything" for him. Exh. 6 (Carreon depo p. 70). His mother acknowledged that she did not try to take him to an orthopedist between the two

---

[2] Unpublished opinions may be cited as persuasive authority. *See* 5TH CIR. R. 47.5.3; 6TH CIR. R. 28(g).

emergency room visits. Exh. 2 (Aleman depo p. 74). She also testified she did not take him to the follow-up orthopedic appointment arranged by the second emergency room doctor on the second visit. Exh. 2 (Aleman depo p. 79, 81). The *Green* and *Phipps* cases make clear that a hospital does not violate EMTALA where, as in this case, the hospital provides proper screening and stabilization, but the plaintiff fails to obtain follow-up care outside the hospital.

## VI. Prayer

Defendant Brownsville Medical Center prays that this motion be granted, that judgment be entered that plaintiff take nothing on all claims as to Brownsville Medical Center, and for all other relief to which it is entitled.

Respectfully submitted,

**ADAMS & GRAHAM, L.L.P.**
222 E. Van Buren, West Tower
Harlingen, Texas 78550
956/428-7495

By: _/s/ Will Hughes_
WILL HUGHES
State Bar No. 10240100
Federal ID No. 15809
SCOTT T. CLARK
State Bar No. 00795896
Federal ID No. 21676

Attorneys for *Defendant*
BROWNSVILLE MEDICAL CENTER

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument was forwarded to the following counsel of record on this the 26th day of October, 2004.

Mr. Denis A. Downey  
ATTORNEY AT LAW  
1185 F.M. 802, Suite 3  
Brownsville, TX 78521

*Via CM/RRR 7003 0500 0002 3732 4062*

_____  
SCOTT T. CLARK