B-03-234

provided that
d to the plan
which would
n would have
k. The court
d run counter
tated that

acts of bene-
ation that al-
ry personally
should also
iries standing
on those prof-
iries' alleged
y.

standing be-
ailable to give
*Id.* at 1411.
at its grant of
secific type of

y is very dif-
Coleman nev-
beneficiary of
action on the
y profit by its
ot shown that
be the "only
to the goals of
is not apply to
Coleman's reli-
or standing is

N

n did not have
inder ERISA,
his claim. We
gment below;
grounds than
court.

Joyce Smith GREEN, et al.,
Plaintiffs–Appellants,

v.

TOURO INFIRMARY, et al., Defendants,

Touro Infirmary, Defendant–Appellee.

No. 92–9521

Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

June 4, 1993.

Relatives of patient who died after she was discharged from hospital brought action against hospital under Emergency Medical Treatment and Active Labor Act (EMTALA) alleging that hospital failed to stabilize emergency medical condition, and hospital moved for summary judgment. The United States District Court for the Eastern District of Louisiana, Edith Brown Clement, J., granted the motion, and relatives appealed. The Court of Appeals, E. Grady Jolly, Circuit Judge, held that patient's condition had been stabilized when she was discharged, and thus recovery against hospital under EMTALA was precluded.

Affirmed.

**1. Federal Courts** ⇐776

On appeal from district court's summary judgment, Court of Appeals reviews record de novo to ascertain whether any genuine issues exist as to any material fact; if record is devoid of genuine issue of material fact, Court of Appeals reviews evidence to determine whether moving party was entitled to judgment as matter of law. Fed.Rules Civ. Proc.Rule 56(c), 28 U.S.C.A.

**2. Federal Civil Procedure** ⇐2544

Once summary judgment motion has been made and adequately supported, non-movant cannot rest on pleadings, but must bring forth significant probative evidence to prevent summary judgment. Fed.Rules Civ. Proc.Rule 56(c), 28 U.S.C.A.

**3. Hospitals** ⇐7

Emergency Medical Treatment and Active Labor Act (EMTALA) requires only that hospital stabilize individual's medical condition, and does not require hospital to cure the condition; hospital's responsibility under statute ends when it has stabilized medical condition. Social Security Act, § 1867, as amended, 42 U.S.C.A. § 1395dd.

**4. Hospitals** ⇐7, 8

Patient's condition was stabilized, and thus patient's relatives could not recover under Emergency Medical Treatment and Active Labor Act (EMTALA) for patient's subsequent death; relatives did not rebut hospital's evidence establishing that when she was discharged, patient was ambulatory, with no acute distress, and with stable vital signs. Social Security Act, § 1867, as amended, 42 U.S.C.A. § 1395dd.

---

Joseph W. Thomas, New Orleans, LA, for plaintiffs-appellants.

Harold A. Thomas, Katherine B. Muslow, Thomas, Hayes, Beahm, New Orleans, LA, for defendant-appellee.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before JOLLY, DUHÉ, and BARKSDALE, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

In this case, several plaintiffs brought suit under the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd, alleging that a hospital failed to stabilize an individual's emergency medical condition before discharging her. The hospital presented sufficient summary judgment evidence that it had stabilized the individual's medical condition. The plaintiffs, however, chose not to offer any evidence contradicting the hospital's contention that it had fulfilled its obligations under the statute. The district court granted the hospital's motion for summary judgment, and we now affirm.

538                          992 FEDERAL REPORTER, 2d SERIES

I

On April 6, 1990, at approximately 4:00 p.m., Christeen Robertson went to the Touro Infirmary ("Touro") emergency room complaining of swelling in her extremities, pain in her right shoulder, dizziness, headaches, and numbness in her right hand. The emergency room staff took her vital signs. All were within normal limits except for her blood pressure, which was slightly elevated. The emergency room staff also took her medical history and learned that Robertson had spent the last three days at Charity Hospital in New Orleans. Robertson had left Charity Hospital without waiting for her test results. Touro's staff contacted Charity Hospital and obtained Robertson's test results.

In the emergency room, both Dr. Harry Hersey and Dr. Edward Dees examined Robertson. Ultimately, Dr. Jairo Barona was her treating physician. Touro's medical records indicate that Dr. Barona concluded that Robertson was "having acute nephrotic syndrome and needs to be admitted." Dr. Barona told Robertson "to go to the Charity Hospital due to her insurance status for evaluation and admission." Touro's medical staff treated Robertson in the emergency room and followed her condition for approximately seven hours. The hospital discharged Robertson at about 11 p.m. At that time, Robertson's vital signs were stable, she was not in acute distress, and she was ambulatory. Touro's staff instructed her to go to Charity Hospital as soon as possible. Later Robertson died. She was survived by her children Joyce Smith Green, Michael Smith, Eric Robertson, Felita Robertson and her husband Charles Robertson, Jr.

II

Robertson's surviving spouse and children brought this suit against Touro for an alleged violation of the Emergency Medical Treatment and Active Labor Act, 42 U.S.C.

§ 1395dd ("EMTALA"). Touro moved for summary judgment arguing that there was no evidence supporting the plaintiffs' allegation that Touro violated EMTALA. Touro argued that it had not violated the act because when it discharged Robertson her vital signs were normal, she was ambulatory, and she was in a stable condition. In support of its motion for summary judgment, Touro submitted its medical records and affidavits from Dr. Barona and Dr. Dees. Both Dr. Barona and Dr. Dees agreed that Touro's staff had stabilized Robertson and that her condition was not life threatening when Touro discharged her.

Although this case has been pending since 1990, the plaintiffs have undertaken virtually no discovery and they have not produced a medical expert. The plaintiffs did not submit any competent evidence to rebut Touro's contention that it had complied with the statute. The only evidence the plaintiffs presented was a letter from Dr. Lawrence Levy.[1] The district court determined that Dr. Levy's letter was not competent summary judgment evidence because it was not submitted through an affidavit. Finding that the plaintiffs had failed to rebut Touro's evidence that it had stabilized Robertson's condition as required by EMTALA, the district court granted Touro's motion. The plaintiffs appeal.

III

[1, 2] On appeal from a district court's summary judgment, we review the record *de novo* to ascertain whether any genuine issues exist as to any material fact. If the record is devoid of a genuine issue of material fact, we review the evidence to determine whether the moving party was entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *FDIC v. Myers*, 955 F.2d 348, 349 (5th Cir. 1992). Once a motion for summary judgment has been made and adequately supported, the non-movant cannot rest on the

---

1. Dr. Levy's letter stated only that
   it would have been appropriate [for Touro] to repeat her [Robertson's] renal function tests. In situations like this, renal function can deteriorate rapidly, over a mater of days, although such deterioration of function would be unusual.

   Dr. Levy's letter is remarkable for what is does not contain. No where in it does Dr. Levy suggest that Touro's staff failed to stabilize Robertson's condition before discharging her.

oved for
iere was
s' allega-
· Touro
ə act be-
her vital
tory, and
ipport of
t, Touro
affidavits
Both Dr.
: Touro's
that her
hen Tou-

ling since
virtually
·oduced a,
ot submit
uro's con-
e statute.
oresented
vy.¹ The
.evy's let-
judgment
submitted,
the plain-
lence that
ion as re-
urt grant-
's appeal.

ct court's
record de·
ine issues
· record is
al fact, we
: whether
judgment
·.P. 56(c);
I (5th Cir.
ary judg-
ately sup-
st on the

·hat is does
·. Levy sug-
ize Robert-
er.

pleadings. The non-movant "must bring forth significant probative evidence to prevent summary judgment." *Stine v. Marathon Oil Co.*, 976 F.2d 254, 265 (5th Cir.1992) (citing *Union Planters Nat'l Leasing Inc. v. Woods*, 687 F.2d 117 (5th Cir.1982)).

[3, 4] The plaintiffs contend that they have a cause of action against Touro under EMTALA because 1) Touro failed to perform appropriate tests to determine whether Robertson's renal failure presented an emergency condition, 2) Touro failed to stabilize Robertson's renal condition before discharging her, and 3) Touro failed to transfer Robertson to another medical facility. The plaintiffs' arguments fail. As we explain below, the only evidence in the record leads to the inescapable inference that Touro's staff had stabilized Robertson's condition before discharging her. EMTALA requires only that a hospital stabilize an individual's emergency medical condition; it does not require a hospital to cure the condition.

EMTALA strictly sets out a hospital's responsibilities toward individuals who enter their emergency rooms requesting care. The statute provides that when such a person requests medical attention, the hospital must first screen the individual "to determine whether an emergency medical condition (within the meaning of subsection (e)(1) of this section) exists." 42 U.S.C. § 1395dd(a).² If the individual suffers from an emergency conditions the hospital must provide either:

(A) with the staff and facilities available at the hospital, for such further medical examination and such treatment as may be required to *stabilize* the medical condition, or

(B) for transfer of the individual to another medical facility in accordance with subsection (c) of this section.

2. EMTALA defines an emergency medical condition as

a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in

(i) placing the health of the individual (or, with respect to a pregnant woman, the health of the woman or the child) in serious jeopardy,

42 U.S.C. § 1395dd(b)(1) (emphasis added).³ Under EMTALA an emergency medical condition is "stabilized" if "no material deterioration of the condition is likely, within reasonable medical probability, to result from or occur during the transfer of the individual from a facility." 42 U.S.C. § 1395dd(e)(3)(B). Transfer "means the movement (including the discharge) of an individual outside a hospital's facilities at the direction of any person employed by (or affiliated or associated, directly or indirectly, with) the hospital." 42 U.S.C. § 1395dd(e)(4). The hospital's responsibility under the statute ends when it has stabilized the individual's medical condition. See *Brooker v. Desert Hosp. Corp.*, 947 F.2d 412, 415 (9th Cir.1991).

The district court found that Touro met its obligations under the statute when it stabilized Robertson's condition. The district court based this conclusion on Touro's medical records and the affidavits from Dr. Dees and Dr. Barona. Dr. Dees states in his affidavit that he "treated and followed Christeen Robertson for approximately four hours prior to her discharge and that she was stable and able to be discharged home at approximately 23:00." Dr. Dees goes on to say that Robertson was "ambulatory[,] with no acute distress[,] and with stable vital signs." Dr. Barona states that he "was aware of her [Robertson's] condition[,] which was not life threatening[,] and of her need for further evaluation and treatment of nephritis and hypertension," and that "he recommended follow-up treatment at Charity Hospital New Orleans." This evidence leads to the inescapable inference that Robertson was in a stable condition when Touro discharged her and, thus, Touro adequately supported its motion for summary judgment. Since the plaintiffs failed to present any evidence to contradict Touro's evidence, it was appropri-

(ii) serious impairment of bodily functions, or

(iii) serious dysfunction of any bodily organ or part.

42 U.S.C. § 1395dd(e)(1).

3. The district court assumed, without deciding, that Robertson suffered from an emergency medical condition.

**540**                    **992 FEDERAL REPORTER, 2d SERIES**

ate for the district court to grant Touro's motion for summary judgment.


### IV

For all of the foregoing reasons, the decision of the district court is AFFIRMED.

AFFIRMED.



**Billy Joe ASHE, et al., Plaintiffs–
Appellants,**

v.

**Joe CORLEY, etc., Defendant,**

**Montgomery County, Texas,
Defendant–Appellee.**

**No. 91–6299.**

**United States Court of Appeals,
Fifth Circuit.**

**June 4, 1993.**

Jail inmates brought action against county alleging civil rights and Racketeer Influenced and Corrupt Organizations (RICO) violations against county sheriff's department. The United States District Court for the Southern District of Texas, David Hittner, J., granted county's motion for summary judgment on all issues, and inmates appealed. The Court of Appeals, Johnson, Circuit Judge, held that: (1) denial of inmates' motion for leave to amend their complaint was not abuse of discretion; (2) grant of summary judgment on inmate's RICO claims was warranted; and (3) inmates' failure to plead specific facts tending to prove civil rights violations was not fatal to inmates' § 1983 claims.

Affirmed in part and reversed in part and remanded.

**1. Federal Courts ⬥817**

Court of Appeals reviews district court's denial of leave to amend complaint for abuse of discretion. Fed.Rules Civ.Proc.Rule 15(a), 28 U.S.C.A.

**2. Federal Civil Procedure ⬥849**

Where reasons for denying leave to amend complaint are ample and obvious, district court's failure to articulate specific reasons does not indicate abuse of discretion. Fed.Rules Civ.Proc.Rule 15(a), 28 U.S.C.A.

**3. Federal Civil Procedure ⬥841**

Denial of plaintiffs' motion for leave to amend their complaint was not abuse of discretion where plaintiffs did not request leave to file amended complaint until nearly four years after original complaint was filed, and proposed amendment would have added new cause of action against defendant less than one week prior to trial; while delay alone may not be sufficient reason to deny leave to amend, amendment should not be allowed where proposed amendment would prejudice opposing party. Fed.Rules Civ.Proc.Rule 15(a), 28 U.S.C.A.

**4. Federal Civil Procedure ⬥2533.1**

Where defendant's motion for summary judgment challenged only the sufficiency of plaintiffs' pleadings, motion should have been evaluated as motion to dismiss for failure to state a claim upon which relief could be granted; where motion for summary judgment is based solely on pleadings and makes no reference to affidavits, depositions, or interrogatories, it makes no difference whether motion is evaluated as motion for summary judgment or motion to dismiss for failure to state a claim, as both standards reduce to the same question. Fed.Rules Civ.Proc.Rules 12(b)(6), 56(c), 28 U.S.C.A.

**5. Federal Civil Procedure ⬥2481**

County was entitled to grant of its motion for summary judgment with respect to Racketeer Influenced and Corrupt Organizations (RICO) claims brought by jail inmates where, both in their complaint and during oral argument, inmates alleged that "enterprise" involved was county sheriff's department; sheriff's department and county were one and the same, and RICO defendant must be separate and distinct entity from enter-