IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ARTURO CARREON                          :
                                        :
                                        :
VS.                                     :        CIVIL ACTION NO. B-03-234
                                        :
BROWNSVILLE MEDICAL CENTER              :
AND TENET HEALTHCARE, LTD.              :

## Defendant's Proposed Voir Dire

### Proposed Factual Introduction

　　　　Plaintiff Arturo Carreon a resident of Brownsville, presented to Brownsville Medical Center's (BMC) emergency room on two occasions. He had a fractured ankle. He first presented in the emergency room on December 7, 2001, at 02:55 a.m. after drinking beer and was seen and splinted. He was discharged from the emergency room at 05:20 a.m. Mr. Carreon did not follow up with a private physician. He presented to the emergency department a second time, December 14, 2001, at 14:51 p.m. and was re-splinted. He was discharged at 15:12 p.m. to follow up with a private doctor.

Mr. Carreon is suing the hospital contending the hospital did not properly screen and stabilize his condition. The hospital contends the healthcare providers properly recognized his fracture and stabilized it prior to discharging Mr. Carreon to follow up with a private physician. The hospital also contends Mr. Carreon did not mitigate his damages, that is take actions which would minimize his claimed injuries.

### Proposed Questions
1.　　Is there any member of the jury panel who knows the Plaintiff, Arturo Carreon?
2.　　If so, would your relationship with the plaintiff cause you to believe him, rather than someone else, or cause you to have sympathy for his case?
3.　　Plaintiffs will call a number of witnesses in this case. I will read to you the names of those witnesses. If you know any of the them, please raise your hands. (Read the names.)
4.　　Please describe the nature of your knowledge of these witnesses. Do you feel that because you know these people that you would tend to believe them, rather than someone else?

[12lj]c:\files|B-1479\motions\Voir Dire-001                                    Page 1

5.     The parties are represented by counsel. The plaintiff is represented by Mr. Dennis Downey of Brownsville, Texas. The defendant Brownsville Medical Center is represented by Will Hughes and Kent Hamby of the firm Adams & Graham, L.L.P. in Harlingen. Do you know any of these lawyers, and is there anything about that relationship that would make it difficult for you to serve as a juror in this case?

6.     Is there anything in any past experience you have had with Brownsville Medical Center or feelings you may have about Brownsville Medical Center that would cause you to have a leaning, one way or the other, as we begin this case? If so, please describe that experience or those feelings with regard to Brownsville Medical Center. Has anyone here been a patient at Brownsville Medical Center or had a family member or close friend hospitalized at Brownsville Medical Center? Is there anything about that experience, even if it was not related to the emergency room that would make it difficult for you to be a fair and impartial juror for the hospital in this case.

7.     Is there anything in any past experience you have had with any other hospital or health care provider, particularly in an Emergency Room setting that would cause you to have a leaning, one way or the other, as we begin this case? If so, please describe that experience.

8.     Has anyone ever served as a juror or witness in a civil case? If so:
   a.     What was the nature of the case?
   b.     What Court?
   c.     Was the verdict for the Plaintiff or Defendant?
   d.     Is there anything about that case that would influence you in this case?

9.     Have any of you, or any of your family members or close friends filed a personal injury case? If you answered yes, was it a medical malpractice case?

10.    Have any of you, or any of you family members or close friends ever been denied medical care because of an inability to pay? If so, please describe what happened and explain why that experience might make it hard for you to be fair to the hospital in this case.

11.    Is there any member of the jury panel who has a reservation or concern about holding the Plaintiffs to their burden of proof in this lawsuit?

12.    Is there any member of the jury panel who would be likely to decide this case on the basis of sympathy for plaintiff Arturo Carreon, rather than on the basis of a fair and objective evaluation of all the evidence?

13.    The Court will instruct you concerning the nature of Plaintiffs' claims and the law which governs these claims. It might be that the Court's instructions on the law regarding these claims and any rights which Plaintiffs may have will differ from your views. In such a circumstance, is there anyone on the jury panel who cannot follow the Court's instructions?

14.    Does any member of the jury panel feel that just because a lawsuit is filed

and goes to trial, that Plaintiffs' claims must have merit, or that Plaintiffs should recover something?

15.    Based upon what you know about this case so far, is there anything in your background or experience that would affect your ability to be impartial in this case?

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ARTURO CARREON                          :
                                        :
VS.                                     :        CIVIL ACTION NO. B-03-234
                                        :
BROWNSVILLE MEDICAL CENTER              :
AND TENET HEALTHCARE, LTD.              :


## DEFENDANT'S PROPOSED COURT'S CHARGE TO THE JURY

General Instructions

MEMBER OF THE JURY:

You have heard the evidence in this case. I will now instruct you on the law that you must apply.
It is your duty to follow the law as I give it to you. On the other hand, you the jury are the judges of the
facts. Do not consider any statement that I have made in the course of trial or make in these instructions
as an indication that I have any opinion about the facts of this case.

You have heard the closing arguments in this case. Opening statements and closing arguments
are not evidence and are not instructions on the law. They are intended only to assist the jury in
understanding the evidence and the parties' contentions.

Your verdict must be unanimous and you must answer all questions from a preponderance of the
evidence which means the greater weight and degree of credible evidence before you. In other words, a
preponderance of the evidence just means the amount of evidence that persuades you that a claim is more
likely so than not so. In determining whether any fact has been proved by a preponderance of the
evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses,
regardless of who may have called them, and all exhibits received in evidence, regardless of who may
have produced them.

[12lj]c:\files|B-1479\motions\Charge-001                                      Page 1

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget something or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was an international falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witness may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case. One is direct evidence-such as testimony of an eyewitness. The other is indirect or circumstantial evidence-the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field (he is called an expert witness) is permitted to state his opinions on those technical matters. However, you are not required to accept that opinion. As within any other witness, it is up to you to decide whether to rely upon it.

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from evidence that the expert witness has been or will be paid for reviewing the case and testifying, or from the evidence that he testifies regularly as an expert witness and his income form such testimony represents a significant portion of his income.

**[Fifth Circuit Pattern Jury Instructions, 3.1, 1995.]**

## BIAS—CORPORATE PARTY INVOLVED

Do not let bias, prejudice or sympathy play any part in your deliberations. A corporation and all other persons are equal before the law and must be treated as equals in a court of justice.

**[Fifth Circuit Pattern Jury Instructions, 2.13, 2004.]**

Liability

Plaintiff Arturo Carreon alleges that on or about December 7, 2001, and again on December 14, 2001, he sought treatment at the defendant's hospital Brownsville Medical Center. Plaintiff Arturo Carreon claims that the defendant hospital did not provide appropriate medical screening examinations to determine whether he had an emergency medical condition, and failed to stabilize his known emergency medical condition prior to discharging him. Defendant Brownsville Medical Center contends that it did provide appropriate medical screening examinations and stabilized any emergency medical condition prior to discharging plaintiff Arturo Carreon.

Plaintiff Arturo Carreon alleges that he suffered personal injury as a direct result of defendant's conduct. Defendant Brownsville Medical Center denies that plaintiff Arturo Carreon suffered any personal harm as a direct result of defendant's conduct.

[12lj]c:\files|B-1479\motions\Charge-001                                                    Page 3

source: *Federal Jury Practice and Instructions*, §§176.01, 176.55, 176.58 (West 5th ed. 2001).

In order to sustain plaintiff's burden of proof, plaintiff Arturo Carreon must prove each of the following six essential elements by a preponderance of the evidence:

First: Defendant Brownsville Medical Center has both a Medicare Provider Agreement with the Secretary of Health and Human Services and an emergency room or emergency department;

Second: Plaintiff Arturo Carreon went to the defendant's emergency room or emergency department;

Third: Plaintiff Arturo Carreon requested examination or treatment;

Fourth: Plaintiff Arturo Carreon had an emergency medical condition;

Fifth: Defendant Brownsville Medical Center either

(a) did not provide Plaintiff Arturo Carreon with an appropriate medical screening examination, or

(b) having diagnosed an emergency medical condition, discharged plaintiff Arturo Carreon before the diagnosed emergency medical condition was stabilized;

Sixth: As a direct result of the conduct of defendant Brownsville Medical Center as described in paragraph five, plaintiff suffered personal harm.

source: *Federal Jury Practice and Instructions*, §176.20 (West 5th ed. 2001).

The term "appropriate medical screening examination" means a screening to determine the existence of an emergency medical condition that is the same or similar to the screening provided to all patients presenting to the emergency department or emergency room complaining of the same condition or exhibiting the same symptoms or condition.

source: *Federal Jury Practice and Instructions*, §176.30 (West 5th ed. 2001).

The term "emergency medical condition" means "a medical condition manifesting itself by acute symptoms of sufficient severity that the absence of immediate medical attention could reasonably be

expected to result in placing the health of the individual in serious jeopardy, serious impairment to bodily functions, or serious dysfunction of any bodily organ or part."

source: *Federal Jury Practice and Instructions*, §176.31 (West 5th ed. 2001).

The term "to stabilize" means "to provide such medical treatment of the condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result from or occur during the transfer of the individual from a facility

source: *Federal Jury Practice and Instructions*, §176.32 (West 5th ed. 2001).

The duty "to stabilize" as required by this statute does not arise until the defendant diagnoses an "emergency medical condition."  A hospital can be held liable for failing to stabilize only those emergency medical conditions that it detects.

source: *Federal Jury Practice and Instructions*, §176.33 (West 5th ed. 2001).

**2.20**

In this case, the plaintiff must prove every essential part of his claim by a preponderance of the evidence.

A preponderance of the evidence simply means evidence that persuades you that the plaintiff's claim is more likely true than not true.

In deciding whether any fact has been proven by a preponderance of the evidence, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of the plaintiff's claim by a preponderance of the evidence, you should find for the defendant as to that claim.

In this case, the plaintiff Arturo Carreon must prove every essential part of his claim by a

preponderance of the evidence.

A preponderance of the evidence simply means evidence that persuades you that the plaintiff's claim is more likely true than not true.

In deciding whether any fact has been proven by a preponderance of the evidence, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of the plaintiff's claim by a preponderance of the evidence, you should find for the defendant Brownsville Medical Center as to that claim.

**source: Fifth Circuit Pattern Jury Instructions §2.20 (2004).**

Damages

If the plaintiff has proven his claim against the defendant by a preponderance of the evidence, you must determine the damages to which the plaintiff is entitled. You should not interpret the fact that I have given you instructions about the plaintiff's damages as an indication in any way that I believe the plaintiff should, or should not, win this case. It is your task first to decide whether the defendant is liable. I am instructing you on damages only so that you will have guidance in the event you decide that the defendant is liable and that the plaintiff is entitled to recover money from the defendant.

**[Fifth Circuit Pattern Jury Instructions, 15.1, 2004.]**

If you find that the defendant is liable to the plaintiff, then you must determine an amount that is fair compensation for all of the plaintiff's damages. These damages are called compensatory damages. The purpose of compensatory damages is to make the plaintiff whole-that is, to compensate the plaintiff for the damage that the plaintiff has suffered. Compensatory damages are not limited to the expenses that the plaintiff may have incurred because of his injury. If the plaintiff wins, he is entitled to compensatory

damages for the physical injury, pain and suffering that he has suffered because of the defendant's conduct.

You may award compensatory damages only for those injuries that the plaintiff proves were the direct result of the defendant's allegedly wrongful conduct. The damages that you award must be fair compensation for all of the plaintiff's damages, no more and no less. Damages are not allowed as a punishment and cannot be imposed or increased to penalize the defendant. You should not award compensatory damages for speculative injuries, but only for those injuries which the plaintiff has actually suffered or that the plaintiff is reasonably likely to suffer in the future.

If you decide to award compensatory damages, you should be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require that the plaintiff prove the amount of his losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

You must use sound discretion in fixing an award of damages, drawing reasonable inferences where you find them appropriate from the facts and circumstances in evidence. You should consider the following elements of damage, to the extent you find them proved by a preponderance of the evidence. **[Fifth Circuit Pattern Jury Instructions, 15.2, (2004); substituted statutory "direct result" standard for "proximate cause".]**

An award of future damages necessarily requires that payment be made now for a loss that plaintiff will not actually suffer until some future date. If you should find that the plaintiff is entitled to future damages, including future earnings, then you must determine the present worth in dollars of such future damages.

**[Fifth Circuit Pattern Jury Instructions, 15.3(C), 2004.]**

You may award damages for any bodily injury that the plaintiff sustained as a direct result of any failure by Brownsville Medical Center to stabilize an emergency medical condition of Arturo Carreon prior to discharging him from the hospital. No evidence of the value of intangible things, such as physical pain and suffering, has been or need be introduced. You are not trying to determine value, but an amount that will fairly compensate the plaintiff for the damages he has suffered. There is no exact standard for fixing the compensation awarded for these elements of damage. Any award that you make should be fair in light of the evidence.

**[Fifth Circuit Pattern Jury Instructions, 15.4, 2004.]**

You may award damages for aggravation of an existing disease or physical defect directly resulting from any failure by Brownsville Medical Center to stabilize an emergency medical condition of Arturo Carreon prior to discharging him from the hospital. If you find that there was such an aggravation, you should determine what portion of the plaintiff's condition resulted from the aggravation and make allowance in your verdict only for the aggravation.

**[Fifth Circuit Pattern Jury Instructions, 15.5, 2004.]**

"Medical care reasonably incurred by Arturo Carreon" means the reasonable value of medical care and treatment that the plaintiff will require because of the aggravation of his injuries which were directly caused by the defendant's wrongful conduct.

**[Fifth Circuit Pattern Jury Instructions, 15.6, 2004; 42 U.S.C. § 1395dd(d)(2)(A) .]**

A person who claims damages resulting from the wrongful act of another has a duty under the law to use reasonable diligence to mitigate-to avoid or minimize those damages.

If you find the defendant is liable and the plaintiff has suffered damages, the plaintiff may not recover for any item of damage which he could have avoided through reasonable effort. If you find by a preponderance of the evidence the plaintiff unreasonably failed to take advantage of an opportunity to lessen his damages, you should deny him recovery for those damages which he would have avoided had

he taken advantage of the opportunity.

You are the sole judge of whether the plaintiff acted reasonably in avoiding or minimizing his damages. An injured plaintiff may not sit idly by when presented with an opportunity to reduce his damages. However, he is not required to exercise unreasonable efforts or incur unreasonable expenses in mitigating the damages. The defendant has the burden of proving the damages which the plaintiff could have mitigated. In deciding whether to reduce the plaintiff's damages because of his failure to mitigate, you must weigh all the evidence in light of the particular circumstances of the case, using sound discretion in deciding whether the defendant has satisfied his burden of proving that the plaintiff's conduct was not reasonable.

**[Fifth Circuit Pattern Jury Instructions, 15.15, 2004.]**

You are instructed that when a hospital discharges a patient who is stable at the time of discharge, the hospital has no duty to ensure that the patient seeks or obtains appropriate follow-up care.

**[*Green v. Touro Infirmary*, 992 F.2d 537, 539-40 (5th Cir. 1993); *Phipps v. Bristol Reg'l Med. Ctr.*, 117 F.3d 1421, 1997 WL 397200 at \*2 (6th Cir. 1997, not designated for publication)]**

## DEFENDANT'S REQUESTED SPECIAL INTERROGATORIES

MEMBER OF THE JURY:

### QUESTION NO. 1

Do you find from the preponderance of the evidence that Brownsville Medical Center failed to provide an appropriate medical screening examination to Arturo Carreon on December 7, 2001?

Answer "Yes" or "No": _____

If you answered "yes" to question 1, then answer question 2.  Otherwise, do not answer question 2 and proceed to question 3.

### QUESTION NO. 2

Do you find from the preponderance of the evidence that the failure of Brownsville Medical Center to provide an appropriate medical screening examination to Arturo Carreon on December 7, 2001 directly resulted in injury to Arturo Carreon?

Answer "Yes" or "No": _____

### QUESTION NO. 3

Do you find from the preponderance of the evidence that Brownsville Medical Center failed to provide an appropriate medical screening examination to Arturo Carreon on December 14, 2001?

Answer "Yes" or "No": _____

If you answered "yes" to question 3, then answer question 4.  Otherwise, do not answer question 4 and proceed to question 5.

### QUESTION NO. 4

Do you find from the preponderance of the evidence that the failure of Brownsville Medical Center to

provide an appropriate medical screening examination to Arturo Carreon on December 14, 2001 directly resulted in injury to Arturo Carreon?

Answer "Yes" or "No": _____

## QUESTION NO. 5

Do you find from the preponderance of the evidence that Brownsville Medical Center failed to stabilize an emergency medical condition of Arturo Carreon prior to discharging him from the hospital on December 7, 2001?

Answer "Yes" or "No": _____

If you answered "yes" to question 5, then answer question 6. Otherwise, do not answer question 6 and proceed to question 7.

## QUESTION NO. 6

Do you find from the preponderance of the evidence that the failure of Brownsville Medical Center to stabilize an emergency medical condition of Arturo Carreon prior to discharging him from the hospital on December 7, 2001 directly resulted in injury to Arturo Carreon?

Answer "Yes" or "No": _____

## QUESTION NO. 7

Do you find from the preponderance of the evidence that Brownsville Medical Center failed to stabilize an emergency medical condition of Arturo Carreon prior to discharging him from the hospital on December 14, 2001?

Answer "Yes" or "No": _____

If you answered "yes" to question 7, then answer question 8. Otherwise, do not answer question 8 and proceed to question 9.

## QUESTION NO. 8

Do you find from the preponderance of the evidence that the failure of Brownsville Medical Center to stabilize an emergency medical condition of Arturo Carreon prior to discharging him from the hospital on

December 14, 2001 directly resulted in injury to Arturo Carreon?

Answer "Yes" or "No": _____

Answer this question only if you have answered "yes" to any of the following combinations of questions: 1 and 2, 3 and 4, 5 and 6, or 7 and 8. Otherwise, do not answer this question.

## QUESTION NO. 9

What sum of money, if paid now in cash, would fairly and reasonably compensate Plaintiff Arturo Carreon for his injuries, if any, directly resulting from the failure by Brownsville Medical Center to provide an appropriate medical screening examination, and/or to stabilize an emergency medical condition of Arturo Carreon prior to discharging him from the hospital?

Consider the following elements of damages listed below and none other. Consider each element separately. Do not include damages for one element in any other element.

Answer separately, in dollars and cents, for damages, if any, for:

A.    Physical pain sustained by Arturo Carreon.

       Answer: _____

B.    Medical care reasonably incurred by Arturo Carreon.

       Answer: _____

C.    (1) Physical impairment sustained in the past by Arturo Carreon.

       Answer: _____

       (2) Physical impairment that, in reasonable probability, Arturo Carreon will sustain in the future.

       Answer: _____

[12lj]c:\files\B-1479\motions\Charge-001                                          Page 12

After you retire to the jury room, you will select your own presiding juror. The first thing the presiding juror will do is to have this complete charge read aloud and then you will deliberate upon your answers to the questions asked.

It is the duty of the presiding juror:

1.  to preside during your deliberations;

2.  to see that your deliberations are conducted in an orderly manner and in accordance with the instructions in this charge;

3.  to write out and hand to the bailiff any communication concerning the case which you desire to have delivered to the judge;

4.  to vote on the questions;

5.  to write your answers to the issues in the spaces provided; and

6.  to certify your verdict in the space provided for the presiding juror's signature or to obtain the signatures of all the jurors who agree with the verdict if your verdict is less than unanimous.

After you have retired to consider your verdict, no one has any authority to communicate with you except the bailiff of this Court. You should not discuss the case with anyone, not even with other members of the jury, unless all of you are present and assembled in the jury room. Should anyone attempt to talk to you about the case before the verdict is returned, whether at the courthouse, at your home, or elsewhere, please inform the judge of this fact.

When you have answered all of the questions which you are required to answer under the instructions of the judge and your presiding juror has placed your answers in the spaces provided and signed the verdict as presiding juror or obtained the signatures, you will inform the bailiff at the door of the jury room that you have reached a verdict, and then you will return into Court with your verdict.

_____

**PRESIDING JUROR**

## <u>CERTIFICATE</u>

We, the jury, have answered the above and foregoing questions as herein indicated, and

herewith return same into court as our verdict.

(To be signed by the presiding juror if unanimous.)

_____
PRESIDING JUROR

_____        _____
_____        _____
_____        _____
_____        _____
_____        _____